# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOAN H. LEFKOW | Sitting Judge if Other than Assigned Judge | James F. Holderman |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1337 | **DATE** | 6/26/2001 |
| **CASE TITLE** | GENERAL ELECTRIC CORP vs. MARY MOSELY | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiffs' motion to remand the cases removed by General Electric is denied. Plaintiffs' request for fees and costs is denied. General Electric's motion for summary judgment is granted as to Count I and is denied as to Count II. All cases removed by General Electric are hereby remanded to the Circuit Court of Cook County as permitted by Local Rule 81.2(b) with General Electric no longer as a defendant. The Clerk of Court is directed to mail a certified copy of this order and opinion to the Circuit Court of Cook County forthwith.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

JUN 28 2001
date docketed

docketing deputy initials

6/26/2001
date mailed notice

JS
mailing deputy initials

Document Number

EO-7
FILED FOR DOCKETING
01 JUN 27 AM II: 32

JS courtroom deputy's initials

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOLORES BELL and ROBERT BELL, )
)
Plaintiffs, )
)
v. )   No. 01 C 2166
)
ILLINOIS CENTRAL RAILROAD CO.; )   This decision also applies to
SAFETRON SYSTEMS CORPORATION )   the cases listed on pages 22
GENERAL ELECTRIC COMPANY )   through 26 at the end of this
GENERAL SIGNAL CO., BIRMINGHAM )   opinion.
STEEL COMPANY, JOHN STOKES )
)
Defendants. )
)
)

**DOCKETED**

JUN 2 8 2001



MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 15, 1999, an Amtrak passenger train commonly known as the "City of New Orleans," while heading southbound outside of Chicago on the Illinois Central Railroad line, collided with a semi-tractor trailer truck driven by defendant John Stokes and derailed in Bourbonnais, Illinois. At the time of the crash, the Amtrak train was powered by defendant General Electric's Genesis Locomotive. The derailment resulted in passenger injuries and fatalities. Some of the victims (hereinafter "plaintiffs" or "the state court plaintiffs") sued a number of defendants, including General Electric Company ("General Electric") and General Signal Corporation ("General Signal"), in the Circuit Court of Cook County, Illinois. The complaints of the various state court plaintiffs alleged tort claims including negligence, strict liability, and breach of various implied

1

warranties. Anticipating the filing of those cases, General Electric filed its own actions for declaratory judgment in the United States District Court for the Northern District of Illinois requesting a declaration that: (1) any claim brought by the state court plaintiffs, including any claim alleging defects or negligence in the design, manufacture, construction, performance or choice of materials of General Electric's Genesis locomotive or a claim for breach of implied warranty, is preempted by federal law (Count I); and (2) that its Genesis locomotives were not defectively or negligently designed and that the design, manufacture, construction, performance, and choice of materials of its locomotives did not contribute to causing any injury to or the death of plaintiffs (Count II). Additionally, General Electric and General Signal each removed the state court cases (hereinafter "the removed cases" or "the state court cases") to this federal district court pursuant to 28 U.S.C. § 1441(a) and federal question jurisdiction, 28 U.S.C. 1331.[1]

Plaintiffs have sought a remand of the removed cases, arguing that there is no federal question on the face of their complaints, and that their claims are not completely preempted by federal law. General Electric has opposed the motions to remand the removed state court cases.[2]

_____

[1]These cases, both the declaratory judgment actions and the removed cases, have been collectively referred to by counsel and this court as the Amtrak-Bourbonnais Cases. The cases to which this opinion applies are specifically listed on pages 22 through 25.

[2]General Signal initially also opposed plaintiffs' motion to remand, and filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) in the action filed by Dolores and Robert Bell, assigned to this court, and motion to dismiss the related cases against General Signal assigned to other judges in the district under Fed. R. Civ. P. 12(b)(6). Plaintiffs largely offered no response to General Signal's arguments in opposition to plaintiffs' motion to remand or to General Signal's motion for judgment on the pleadings. Nevertheless, General Signal withdrew its opposition to plaintiffs' motion to remand and its motion for judgment on the pleadings and to dismiss on June 12, 2001. Accordingly, this court does not consider the effect of the Federal Railroad Safety Act ("FRSA"), upon which General Signal initially relied, and which contains an express preemption clause, on this court's subject matter jurisdiction or the possible preemptive effect of the FRSA on

On May 8, 2001, this court set a schedule, after conferring with counsel for the various parties, for the briefing of dispositive motions regarding federal preemption issues raised by the cases assigned to this court, as well as to the related cases assigned to and pending before other judges of this federal district court.[3] General Electric moved for summary judgment on its declaratory judgment actions pursuant to Fed. R. Civ. P. 56 and moved to dismiss the removed cases pursuant to Fed. R. Civ. P. 12(b)(6). This order therefore applies to all removed cases in which General Electric is a defendant and applies to all cases in which General Electric is a plaintiff seeking declaratory judgment arising out of the 1999 Bourbonnais Amtrak crash.[4]

## ANALYSIS

I.  Plaintiffs' Motion to Dismiss Removed Actions for Lack of Subject Matter Jurisdiction

As mentioned, the state court plaintiffs' complaints alleged several common law causes of action against General Electric, including product liability, negligence, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. General Electric removed the cases to this federal district court on the basis that federal law, including the

_____

plaintiffs' claims.

[3]On May 16, 2001, the Executive Committee of this United States District Court assigned most of the declaratory judgment cases to the Honorable Joan Humphry Lefkow for certain specified purposes. On June 9, 2001, the Executive Committee ordered that the motions to dismiss and the motions for summary judgment in the Amtrack-Bourbonnais Cases be heard and decided by this court and entered on the docket of each case on behalf of the assigned judge.

[4]Amtrak removed two cases to federal court, 01 CV 1929 and 01 CV 2048, on the basis of federal question jurisdiction different from that addressed in this motion. Plaintiffs have not moved to remand those cases and do not contest federal jurisdiction. This order therefore does not apply to those two cases.

3

Locomotive Inspection Act, 49 U.S.C. § 20701, et. seq. ("LIA")[5] preempts plaintiffs' complaints. The state court plaintiffs argue that their state law claims were improperly removed from state court and must be remanded because this court lacks subject matter jurisdiction over them. The state court plaintiffs argue that they have not alleged any federal claims against General Electric, and that their claims are not subject to complete preemption. Plaintiffs also moved for costs incurred as a result of General Electric's "improper" removal of their claims from state court.

A.    Subject Matter Jurisdiction

The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S. Ct. 724, 724 (1914).  A case may not be removed to federal court on the basis of a federal defense the defendant might raise to defeat the plaintiff's claim.  Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846 (1983).  Although a plaintiff is generally considered the "master of his complaint," Lister v. Stark, 890 F.2d 941, 943 (7th Cir. 1989), this principle is not without limitation.  An independent corollary to the "well-pleaded complaint rule" is the "artful pleading doctrine." Franchise Tax Board, 463 U.S. at 22, 103 S. Ct. at 2853.  A plaintiff may not frame claims under state law and omit federal questions that are essential to that plaintiffs' recovery.  Id.  Therefore, a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded the suit

---

[5]The LIA originally pertained only to locomotive boilers, and was thus referred to as the "BIA." The law was later amended to apply to all locomotive parts.  Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 608, 47 S. Ct. 207, 208 (1926). Nevertheless, some courts still refer to the Act as the "BIA" or the 'LBIA." See e.g., Law v. General Motors Corp., 114 F.3d 908 (9th Cir. 1997).

so as to couch a federal claim in terms of state law. Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992) (holding that court may look beyond face of complaint to determine if plaintiff "artfully pleaded" matters under state law that actually raise a federal question). In such cases, the court will conclude that a plaintiff's claim actually arose under federal law and is therefore removable. Id.

Federal preemption normally would constitute a federal defense to a state law action, and therefore would not support removal from state court. See Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983, 986 (7th Cir. 2000). In some instances, however, Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be "necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546 (1987). In that situation, removal is proper despite the well-pleaded complaint rule. See id. Once an area of state law has been completely preempted by federal law, any claim purportedly based on state law is considered, from its inception, a federal claim, and therefore arising under federal law. Franchise Tax Board, 463 U.S. at 24, 103 S. Ct. at 2854. Under the law of the Seventh Circuit, a court is not bound by the names and labels placed on a complaint by the plaintiff when that complaint in fact raises a federal question. See Bastien, 205 F.3d at 987. The issue is whether a plaintiff's complaint, however denominated, actually raises matters preempted by federal law. See id.

Federal preemption of state law claims can be either express or implied. "[T]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the subject, or because the object sought to be obtained by federal law and the character

of obligations imposed by it may reveal the same purpose." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S. Ct. 3014, 3022 (1982) (internal quotations omitted). Where Congress intends to occupy a field, state law in that field is preempted. Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 212-213, 103 S. Ct. 1713, 1726-27 (1983).

The LIA does not contain an express preemption clause. Therefore, this court must determine whether it presents an implied preemption of state law. When facing a question of implied preemption, a court must begin with the presumption that the state law is valid. "It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed." New York State Dept. of Soc. Servs. v. Dublino, 413 U.S. 405, 413, 93 S. Ct. 2507, 2513 (1973) (citation omitted). This court begins the task of determining whether the LIA impliedly preempts state law by looking at the language of the statute itself. The LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
>
> (1)     are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2)     have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3)     can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. Accordingly, a railroad carrier may use locomotives and their "parts and

appurtenances" when they are in proper condition as defined by federal law, have been inspected as required by federal law, and can withstand every test required by the Secretary of Transportation.

Although the LIA says nothing about its preemptive effect, the Supreme Court explicitly held that the LIA "was intended to occupy the field," Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 613, 47 S. Ct. 207, 210 (1926), and 75 years of unbroken case authority has expanded that holding to preempt various forms of state law. In Napier, the Court struck down two state statutes that attempted to regulate the components of locomotives, even though those regulations were arguably "commendable" and did not conflict with federal law: (1) a Georgia regulation which required all locomotives to be equipped with an automative firebox door, and (2) a Wisconsin regulation which required all locomotives to have a cab curtain. Id., 47 S. Ct. at 210. The Supreme Court found that the LIA extends to "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." Id. at 611, 47 S. Ct. at 209. The Supreme Court, ten years after the Napier case, held that the phrase "all parts and appurtenances" encompasses "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission." Southern Ry. Co. v. Lunsford, 297 U.S. 398, 402, 56 S. Ct. 504, 506 (1936).

While Napier concerned state legislation, the Supreme Court's reasoning made clear that any attempt by the states to regulate railroads, whether by statute, regulation, or common law cannot be allowed. Consequently, the United States Courts of Appeals for the Second, Fifth, Sixth, and Ninth Circuits have all recognized the LIA's broad preemptive scope. See, e.g., United Transp. Union v. Foster, 205 F.3d 851, 860 (5th Cir. 2000) ("In short, the [LIA] completely preempts the field of locomotive equipment."); Oglesby v. Delaware & Hudson Railway Co., 180 F.3d 458, 462 (2nd Cir.

1999) (state common law action against railroad manufacturer preempted by LIA); Springston v. Consolidated Rail Corp., 130 F.3d 241, 245 (6th Cir. 1997) ("Federal law preempts plaintiff's claims based upon the need for extra-statutory warning devices on the train."); Law v. General Motors Corp., 114 F.3d 908, 911 (9th Cir. 1997) ("The [LIA] preempts any state action that would affect the design, the construction, and the material of locomotives."); id. (Through the LIA, the federal government has established a comprehensive, national regime of locomotive regulation. This regime--enforced by FELA and the threat of heavy civil penalties--preempts every state effort to establish independent standards for the design, construction and material of locomotives."); see also King v. Southern Pacific Transp. Co., 855 F.2d 1485 (10th Cir. 1988) (finding defendant could not be held liable for the failure to install equipment not required by federal law).

Given the national scope of the LIA's regulation, it is axiomatic that state tort law regarding locomotive design, manufacture, and inspection is preempted by the LIA. Imposing tort liability on railroad equipment manufacturers would affect the design, the construction, and the material of locomotives by forcing them to conform to design and construction standards imposed by the states. Law, 114 F.3d at 911. "This would transfer the regulatory locus from the Secretary of Transportation to the state courts--a result the LIA was clearly intended to foreclose." Id. As the Ninth Circuit reasoned, the LIA's:

> broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long distances, with most railroad routes wending through interstate commerce. The virtue of uniform national regulation is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state.

114 F.3d at 910. Any state law that undermines the national regime is preempted by the LIA,

including common law claims. "Apart from compensating victims of accidents for their injuries, the purpose of tort liability is to induce defendants to conform their conduct to a standard of care established by the state." Id. (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247, 79 S. Ct. 773, 780-81 (1959)); see also Oglesby, 180 F.3d at 462 ("For a locomotive carrier or manufacturer, the source of damages, whether statutory or common law, is irrelevant, and both therefore must be preempted by the LIA."). If each state were to employ different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or else adhere to the standard set by the most stringent state. See id. at 910-11. "Either way, Congress's goal of uniform, federal railroad regulation would be undermined." Id. at 911; see also Foster, 205 F.3d at n.16 ("The [LIA] creates a uniform national inspection and regulation scheme for locomotive equipment.")

Here, the removed cases against General Electric fall within the broad scope of actions preempted by the LIA. In their common law actions including product liability, negligence, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose, the state court plaintiffs claim that: (1) the locomotives had "insufficient durability to withstand a foreseeable collision and remain intact"; (2) the locomotives did not have a "protective device to prevent fuel from escaping in the event a fuel tank ruptured"; (3) "the fuel tanks were not sufficiently protected from foreseeable crash forces"; (4) the locomotives had "metal and components that ruptured due to their defective nature"; (5) proper "pre-distribution testing and inspection" was not performed; (6) the locomotives did not have "proper or adequate safeguards or adequate protective devices to prevent the continued flow of fuel out of the fuel tanks after the rupture or breach of the tanks"; and (7) the locomotives did not comply with "applicable standards,

customs, practices, guidelines, or rules." The state court plaintiffs do not allege that General Electric failed to comply with any federal standards, and federal standards are the only possible standards which could regulate General Electric's conduct in the design and manufacture of its locomotives. In their response to General Electric's Local Rule 56.1(a) Statement of Material Facts, the state court plaintiffs admit that their "complaints do not address or allege violations of any federal regulations."

In essence, the state court plaintiffs are alleging that General Electric should have done more, should have designed their locomotives in a manner not required by federal law, added safety devices or features beyond those required by federal law, or done testing and inspection of the locomotives beyond that required by federal law. Here, as in <u>Bastien</u>, granting the relief requested would directly alter the federal regulation of locomotive design, manufacture, and inspection. <u>Bastein</u>, 205 F.3d at 989 ("In this complaint, Bastien has repackaged challenges to the FCC-approved plan in a state law wrapper, but the contents of that package remain challenges to the FCC approved plan."). The LIA forbids such actions.

The plaintiffs in the removed cases rely upon several federal district court decisions for the proposition that removal is not proper. Each of those cases, however, is distinguishable from the present case. In <u>Ready Transportation v. Best Foam Fabricatiors, Inc.</u>, 919 F. Supp. 310 (N.D. Ill. 1996), the district court held that removal was not proper where the parties disputed whether tariffs were due and owing, but did not argue that the rates the state court plaintiff was attempting to collect through the suit deviated from the tariff rates which the defendant was federally mandated to publish. <u>Id.</u> at 312. The district court held that no issue of federal law had to be decided in order to adjudicate Ready's suit; deciding the suit may require reference to federally mandated published rates, but referring to those rates did not present "federal questions which are essential to recovery." <u>Id.</u> at

312-13. Here, by contrast, any court deciding the removed cases will have to resolve issues of federal law. Determining whether General Electric met the standard of care and whether it can be held liable for any plaintiff's injuries requires interpreting the LIA.

In the next district court opinion upon which the state court plaintiffs rely, Castellanos v. U.S. Long Distance Corp., 928 F. Supp. 753 (N.D. Ill. 1996), the district court found that the state court plaintiffs' claims were not completely preempted by the Federal Communications Act ("FCA") on the basis of the "savings clause" of the FCA which provided that nothing in the Act "shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." See id. at 756; see also 47 U.S.C. § 414 (FCA savings clause). Here, by contrast, the Supreme Court has held that Congress intended to completely occupy the field of railroad manufacture and design with the LIA, the statute applicable to these cases. Additionally, the LIA does not contain a savings clause like that in the FCA.

Finally, Owens v. New York Cent. R.R. Co., 267 F. Supp. 252 (E.D. Ill. 1967), upon which the state court plaintiffs also rely, concerned the Federal Safety Appliance Act, not the LIA. In addition, the Owens decision is of dubious precedential value, given the extensive more recent case authority of the United States Courts of Appeals addressed above.

The state court plaintiffs argue that General Electric "misunderstands" federal preemption and is seeking to use it for removal on the basis of a federal defense, citing Lehman v. Brown, 230 F.3d 916, 919 (7th Cir. 2000). In that case, the Seventh Circuit noted that "complete preemption is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field." Id. (internal quotations omitted). The Seventh Circuit described complete preemption as follows: "when federal law occupies the field (as in labor law), every claim arises under federal law.

Any attempt to present a state-law theory then is artful pleading to get around the federal ingredient of the claim; courts look at substance, see the importance of federal law to recovery, and permit removal." Id. (citing Franchise Tax Board of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 22, 103 S. Ct. 2841 (1983). "Complete preemption" happens because federal law takes over all similar claims, not because there is a preemption defense. See id. at 919-20. In Lehman, the Seventh Circuit held that when a complaint alleges that a welfare-benefit plan has committed a tort, the claim must arise under state law, because ERISA does not attempt to specify standards of medical care. See id. at 920. Claims outside the scope of ERISA arise independently of federal law, and the possibility that ERISA preempts one or another state-law theory is just a federal defense. See id.

The state court plaintiffs employ the Seventh Circuit's reasoning in Lehman to argue that the LIA is merely a federal defense, and that Congress did not intend to "occupy the field" of railroad design and manufacture. In so arguing, the state court plaintiffs ignore 75 years of Supreme Court decisions, Napier, 272 U.S. at 613, 47 S. Ct. at 210, and federal appellate court authority, see, e.g., United Transp. Union v. Foster, 205 F.3d 851, 860. While the Seventh Circuit has never held that state law claims challenging the design, manufacture, or inspection of locomotives are preempted by the LIA, the Seventh Circuit and the Supreme Court have held that where Congress has so completely preempted a particular area that no room remains for any state regulation, the complaint is "necessarily federal in character." See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546 (1987); Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 986 (7th Cir. 2000). In addition, the Supreme Court has held that railroad locomotive design, manufacture, and inspection is one such area in which no room remains for state regulation. See Napier, 272 U.S. at

12

613, 47 S. Ct. at 210. Logically combining those two lines of authority, then, leads to the clear result that plaintiffs' complaint is necessarily "federal in character" and thus was properly removed by General Electric.

Finally, plaintiffs argue that their action is not removable by virtue of 28 U.S.C. § 1445(a), which provides: "A civil action in any State court against a railroad or its receivers or trustees, arising under sections 1-4 and 5-10 of the Act of April 22, 1908 (45 U.S.C. §§ 51-54, 55-60), may not be removed to any district court of the United States." According to plaintiffs, this statute covers all Federal Employer's Liability Act ("FELA") actions, and because the LIA, upon which General Electric relies, is an amendment to FELA, actions based upon the LIA or LIA defenses are not removable. However, only specific provisions of FELA are made non-removable by 28 U.S.C. § 1445. Sections 51-60 of FELA (45 U.S.C. §§ 51-60) concern actions for injuries suffered by employees of railroads and other common carriers in the course of their employment. Those, and only those, actions are made non-removable by 28 U.S.C. § 1445(a). The state court plaintiffs are not employees of General Electric, and are not seeking damages for injuries incurred in the course of employment with a railroad. Accordingly, 28 U.S.C. § 1445(a) does not apply to bar General Electric from removing this action to federal court.

B.    Dismissal

General Electric has moved to dismiss every case filed against it which was removed from state court on the basis that plaintiffs' claims fail as a matter of law because they are preempted by federal law. Plaintiffs have responded that dismissal is premature, and they should be permitted to conduct discovery on their claims against General Electric. This court agrees with General Electric that plaintiffs' claims, as presently stated, fail as a matter of law because they are couched in terms

of state law. Plaintiffs explicitly disavowed any assertion to claims based on federal law in supporting their arguments that this court lacks jurisdiction to consider the removed actions or General Electric's declaratory judgment. Accordingly, all the claims asserted against General Electric in the removed cases are preempted by federal law. To the extent the state court plaintiffs attack the design of the locomotives' fuel tanks, those claims are preempted. To the extent the state court plaintiffs' claims are intended to assert some violation of federal law, the claims are impermissibly vague because those claims fail to allege any federal rule with which General Electric did not comply, such that the claims do not comply with Fed. R. Civ. P. 8(a). As such, the plaintiffs' complaints in the removed cases fail to state a claim, and must be dismissed without prejudice. See Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 986 (7th Cir. 2000) ("If Bastien's complaint in fact raises regulatory issues preempted by Congress, then the claims would fail as a matter of law since they are couched in terms of two state law actions. In that case, Bastien's suit properly would be dismissed.")

II.  General Electric's Motion for Summary Judgment on its Declaratory Judgment Actions

General Electric has filed a motion for summary judgment on its declaratory judgment claims that: (1) the state court plaintiff/declaratory judgment defendants' claims are subject to complete federal preemption (Count I) and (2) that the General Electric locomotives complied with applicable federal law (Count II). Plaintiffs have respond that: (1) this federal court does not have constitutional or statutory subject matter jurisdiction over General Electric's declaratory judgment actions; (2) this court should, in its discretion, decline to exercise jurisdiction over the declaratory judgment actions; (3) this court should abstain from considering the declaratory judgment actions and allow the Circuit Court of Cook County to adjudicate General Electric's arguments; and (4)

14

plaintiffs are entitled to discovery on the issues raised by General Electric. Each argument is addressed below.

A.    Subject Matter Jurisdiction

     1.    Constitutional Subject Matter Jurisdiction as to Counts I and II of General Electric's Declaratory Judgment Complaints

"The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts, in their discretion, to render declaratory judgments only where there exists an actual controversy." Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 626 (7th Cir. 1995). The "actual controversy" requirement is a "jurisdictional prerequisite of constitutional dimensions." Id. (internal quotations omitted). In determining whether or not an actual controversy exists, "the question in each case is whether the facts alleged, under all circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941). The focus of the inquiry must rest on the defendant's statements and conduct since an "apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1211 (7th Cir. 1980). Where a declaratory plaintiff ("General Electric") files a complaint in anticipation of litigation by the declaratory defendant ("state court plaintiffs"), a case or controversy exists if the threat of such litigation is real and immediate. Norfolk Southern Ry. Co. v. Guthrie, 233 F.3d 532, 534-35 (7th Cir. 2000). Only the actions of a declaratory defendant known to a declaratory plaintiff at the time the action is commenced can be considered in determining whether such a threat exists. Id. at 535. Even where a case presents an actual controversy, a court may properly refuse to grant declaratory

relief for prudential reasons. International Harvester, 623 F.2d at 1217.

The state court plaintiffs argue that this court lacks constitutional subject matter jurisdiction over General Electric's declaratory judgment actions because, at the time General Electric filed the declaratory judgment actions, there was no "real or immediate threat" that plaintiffs would sue General Electric. General Electric relies upon a statement to the media by lead coordinating counsel for the state court plaintiffs alleging that General Electric was responsible, in part, for plaintiffs' injuries. General Electric also maintains that certain plaintiffs counsel informed them directly that they would be amending their state court complaints to add General Electric as a defendant by March 15, 2001. In response, General Electric filed the declaratory judgment complaints in federal court. Shortly thereafter, some plaintiffs carried through with prior threats and added General Electric as a defendant in the state court actions.

This court finds that the state court plaintiffs' counsel's representations were sufficient to create a real and immediate threat that the state law tort complaints would be amended to add General Electric as a defendant, a threat borne out by later events. Accordingly, this court has constitutional subject matter jurisdiction to consider Count I of General Electric's declaratory judgment actions. However, the state court plaintiffs have never threatened to sue General Electric on the basis that it failed to comply with federal law. As such, this court finds it unnecessary and premature to rule on Count II of General Electric's declaratory judgment complaint. The state court plaintiffs have not claimed that General Electric failed to comply with any federal law, nor have the state court plaintiffs claimed that General Electric is liable to them for the failure to do so. Accordingly, there is no "real and immediate" threat that the state court plaintiffs will sue General Electric for failure to comply with federal law. In other words, no actual controversy exists

regarding whether General Electric complied with federal law. This court therefore lacks constitutional subject matter to consider Count II of General Electric's complaint, and it should be dismissed. If the state court plaintiffs choose to file complaints in federal court alleging claims against General Electric which are not preempted by federal law, General Electric may respond to those claims at that time.

2.    Statutory Subject Matter Jurisdiction as to Count I

United States District Courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, it must be clear from the face of the plaintiffs' complaints that there is a federal question. Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149, 29 S. Ct. 42 (1908); Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992). However, "[i]n declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal jurisdiction would exist over the presumed suit by the declaratory judgment defendant." Northeast Illinois Regional Commuter R.R. Corp. v. Hoey Farina & Downes, 212 F.3d 1010, 1014 (7th Cir. 2000) (quoting GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995)). In other words, if a party cannot get into federal court by anticipating what amounts to a federal defense to a state-law cause of action, that same party also should not be able to use the Declaratory Judgment Act to do so by asserting what is really a preemptive federal defense as the basis of his complaint. Id. (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S. Ct. 876 (1950)). "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal question jurisdiction in the District Court."

<u>Public Service Commission of Utah v. Wycoff Co.</u>, 344 U.S. 237, 248, 73 S. Ct. 236, 242 (1952). Stated differently, "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 16, 103 S. Ct. 2841, 2850 (1983).

Accordingly, the issue of whether this court has statutory subject matter jurisdiction over Count I of General Electric's declaratory judgment complaint is the same as the issue of whether the state court plaintiffs' cases were properly removed to federal court by General Electric. In both instances, the question to be addressed by this court is whether the state court plaintiffs' well-pleaded complaints against General Electric raise a federal question. Normally, the well-pleaded complaint rule would apply to prevent subject matter jurisdiction over the state court plaintiffs' suits against General Electric because those claims do not appear to raise federal questions. However, this court has already determined that it has subject matter jurisdiction over plaintiffs' complaints because their claims are completely preempted by federal law. The state court plaintiffs/declaratory judgment defendants argue that here, as in <u>Northeast Illinois Regional</u>, 212 F.3d 1010, General Electric is improperly attempting to create federal subject matter jurisdiction on the basis of a federal defense to the state court plaintiffs' suit, and that their state complaint does not arise under federal law. This court rejected that argument in denying the state court plaintiffs' motion to remand, and rejects it again here. Again, regardless of how the state court plaintiffs' complaints are worded, they arise under federal law by necessity because federal law and the LIA completely preempt state law, including state common law actions, regarding the design and manufacture of railroad locomotives.

Likewise, General Electric's declaratory judgment claims clearly fall within the area of complete federal preemption of the LIA. In Count I of its declaratory judgment actions, General

18

Electric has requested a declaration that all state common law claims, including strict liability, negligence, and breach of implied warranty claims relating to alleged defects or negligence in the design, manufacture, construction, performance, and choice of materials of the Genesis locomotive and its fuel tanks are preempted under federal law. The Genesis locomotive and its fuel tanks are undoubtedly "parts of the locomotive," <u>Napier v. Atlantic Coast Line R. Co.</u>, 272 U.S. 605, 613, 47 S. Ct. 207, 210 (1926), and an "integral or essential part of a completed locomotive, <u>Southern Ry. Co. v. Lunsford</u>, 297 U.S. 398, 402, 56 S. Ct. 504, 506 (1936). Accordingly, this court has statutory subject matter to consider Count I of General Electric's declaratory judgment claims.

Finally, the state court plaintiffs/declaratory judgment defendants argue that this court should abstain, in its discretion, from exercising jurisdiction over General Electric's declaratory judgment complaints. The state court plaintiffs argue that General Electric can raise its defenses in the state court actions, when they are remanded. However, the cases cited by the state court plaintiffs in support of this argument do not support their position. Rather, those cases hold that a federal court should decline jurisdiction over a federal declaratory judgment action when there is a parallel state court action which will address an issue of state, not federal, law. <u>See</u> <u>e.g.</u> <u>Continental Cas. Co. v. Fuscardo</u>, 35 F.3d 963, 966 (4th Cir. 1994) ("Continental Casualty's request for declaratory relief raises issues of state law . . ."). Here, this court has determined that the state court plaintiffs' complaints arise under federal law, though they purport to allege only state law claims. Accordingly, it is appropriate for this court to exercise jurisdiction over General Electric's declaratory judgment actions to decide this issue of <u>federal</u> law.

In summary, this court has subject matter jurisdiction over General Electric's request for a declaration that the state court plaintiffs' claims are completely preempted by federal law, contained

in Count I of their declaratory judgment complaints. However, because there appears to be no immediate threat that the state court plaintiffs will sue General Electric alleging violations of federal law and a ruling on General Electric's compliance with federal law is premature at this time, this court declines to exercise jurisdiction over Count II of General Electric's declaratory judgment complaint.

### B. Merits of Declaratory Judgment

General Electric has moved for summary judgment on its complaints for declaratory relief both (1) finding that the state court plaintiffs' claims are preempted by federal law, and (2) that General Electric complied with federal law. For all the reasons stated above, this court has determined that federal law completely preempts plaintiffs' state law claims, such that plaintiffs' motion to remand must be denied. Plaintiffs may not avoid this result by "artfully pleading" their way around questions of federal law. For the same reasons, General Electric's request for declaratory judgment on Count I of its complaint that federal law preempts the state law claims filed against General Electric must be granted.

Summary judgment on Count I of General Electric's declaratory judgment is granted.[6] Count II of General Electric's declaratory judgment is dismissed for lack of subject matter jurisdiction.

### CONCLUSION

For all the reasons stated, the state court plaintiffs' motion to remand the cases removed by

---

[6]While General Electric filed a motion for summary judgment, complete with a Local Rule 56.1(a) statement of material facts, on its declaratory judgment claims, this court treats the motion as a motion for judgment on the pleadings. This court finds it appropriate to rule on General Electric's motion for summary judgement as to Count I of its declaratory judgment complaints on the basis of its complaints and the removed actions' pleadings alone, and thus did not consider General Electric's statement of uncontested facts.

General Electric is DENIED. Plaintiffs' request for costs and fees incurred in responding to General Electric's removal of their claims is DENIED. General Electric's motion for summary judgment is GRANTED as to Count I AND DENIED as to Count II. Summary Judgment on Count I of General Electric's declaratory judgment complaint is GRANTED. Count II of General Electric's declaratory judgment complaint is DISMISSED for lack of subject matter jurisdiction. Plaintiffs' claims against General Electric are dismissed without prejudice because they are preempted by federal law. Because no other defendants have asserted federal preemption as a basis for removal or opposed the state court plaintiffs' motion to remand, all cases which were removed by General Electric are hereby remanded forthwith to the Circuit Court of Cook County as permitted by Local Rule 81.2(b), with General Electric no longer as a defendant. The Clerk is directed mail a certified copy of the remand order forthwith.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: June 26, 2001

| | |
|---|---|
| *General Electric Corporation v. Billy E. Adkins* | *01 C 1307* |
| *General Electric Corporation v. Dolores Bell* | *01 C 1314* |
| *General Electric Corporation v. Nancy Schafle* | *01 C 1317* |
| *General Electric Corporation v. Robert Munson* | *01 C 1318* |
| *General Electric Corporation v. Shalaine Johnson (Jodeon Rouser)* | *01 C 1319* |
| *General Electric Corporation v., Cedric Stewart* | *01 C 1321* |
| *General Electric Corporation v. Debra Dowe(Sheena)* | *01 C 1322* |
| *General Electric Corporation v. Kelley Whittaker* | *01 C 1323* |
| *General Electric Corporation v. Max Bonnin (Ashley)* | *01 C 1324* |
| *General Electric Corporation v. Debra Dowe (Amusae)* | *01 C 1325* |
| *General Electric Corporation v. John Vant* | *01 C 1326* |
| *General Electric Corporation v. Max Bonnin (June)* | *01 C 1327* |
| *General Electric Corporation v. John Vant (Wendy)* | *01 C 1329* |
| *General Electric Corporation v. John Vant (Leona)* | *01 C 1330* |
| *General Electric Corporation v. Ray Stewart* | *01 C 1331* |
| *General Electric Corporation v. Doris Whitehead* | *01 C 1333* |
| *General Electric Corporation v. Minnie C. Stewart* | *01 C 1334* |
| *General Electric Corporation v. Michelle Piette* | *01 C 1335* |
| *General Electric Corporation v. Mary Mosley* | *01 C 1337* |
| *General Electric Corporation v. Blanche Jones* | *01 C 1339* |
| *General Electric Corporation v. Shalaine Johnson (Dajuavon Williams)* | *01 C 1342* |
| *General Electric Corporation v. Shalaine Johnson* | *01 C 1344* |
| *General Electric Corporation v. Sarah Ann Dudley* | *01 C 1345* |
| *General Electric Corporation v. Jennifer Falls* | *01 C 1348* |
| *General Electric Corporation v. Gail Gordon-Allen* | *01 C 1352* |
| *General Electric Corporation v. Nancy D. Haigh* | *01 C 1355* |
| *General Electric Corporation v. , Gregory Herman* | *01 C 1358* |
| *General Electric Corporation v. , Charlene A. Hempfling* | *01 C 1362* |

| | |
|---|---|
| *General Electric Corporation v.  Grace Lopez* | *01 C 1624* |
| *General Electric Corporation v.  Hortensia Bennett* | *01 C 1655* |
| *General Electric Corporation v. Lester Barr* | *01 C 1657* |
| *General Electric Corporation v.  Andrea Shidle* | *01 C 1660* |
| *General Electric Corporation v.  Joseph Shidle* | *01 C 1661* |
| *General Electric Corporation v. Marilyn Shidle* | *01 C 1662* |
| *General Electric Corporation v.  Joseph Sims* | *01 C 1663* |
| *General Electric Corporation v.  Joseph Sims (Donnell)* | *01 C 1664* |
| *General Electric Corporation v. Joseph Sims (Jasmine)* | *01 C 1665* |
| *General Electric Corporation v.  Joseph Sims (Joseph)* | *01 C 1666* |
| *General Electric Corporation v.  Cathi Oliver* | *01 C 1668* |
| *General Electric Corporation v. Vandra Sims* | *01 C 1669* |
| *General Electric Corporation v.  Jamie Smith* | *01 C 1670* |
| *General Electric Corporation v.  Carlos Fornari* | *01 C 1671* |
| *General Electric Corporation v.  Joseph Sims (Vannika)* | *01 C 1672* |
| *General Electric Corporation v.  John Stolfa* | *01 C 1722* |
| *General Electric Corporation v.  Selena Roque* | *01 C 1772* |
| *General Electric Corporation v.  Laura Lopez* | *01 C 1775* |
| *General Electric Corporation v.  Bobbi Jackson* | *01 C 1807* |
| *General Electric Corporation v.  Jessica Boeh* | *01 C 1883* |
| *General Electric Corporation v.  Bennie Allen Phillips* | *01 C 1910* |
| *General Electric Corporation v.  Angel Flores* | *01 C 1912* |
| *General Electric Corporation v. Robert Walther* | *01 C 2160* |
| *General Electric Corporation v.  Connie Knode* | *01 C 2161* |
| *General Electric Corporation v.  Katio Roberto* | *01 C 2162* |
| *General Electric Corporation v.  Mary Hamilton* | *01 C 2163* |
| *General Electric Corporation v.  David Roe* | *01 C 2164* |
| *General Electric Corporation v.  Blanch Fortune* | *01 C 2301* |
| *General Electric Corporation v.  Jennifer Hall* | *01 C 2302* |
| *General Electric Corporation v. Angela Wilson McCray* | *01 C 2303* |

*Billy E. Adkins* v. *Illinois Central R.R. Co.*, 01 C 2165 (Bucklo)

*Dolores Bell* v. *Illinois Central R.R. Co.*, 01 C 2166 (Holderman)

*Max Bonnin (Ashley)* v. *Illinois Central R.R. Co.*, 01 C 2167 (Plunkett)

*Max Bonnin (June)* v. *Illinois Central R.R. Co.*, 01 C 2168 (Darrah)

*Debra Dowe (Amusae)* v. *Illinois Central R.R. Co.*, 01 C 2169 (Manning)

*Debra Dowe (Sheena)* v. *Illinois Central R.R. Co.*, 01 C 2170 (Moran)

*Sarah Ann Dudley* v. *Illinois Central R.R. Co.*, 01 C 2171 (Manning)

*Jennifer Falls* v. *Illinois Central R.R. Co.*, 01 C 2172 (Zagel)

*Gail Gordon-Allen* v. *Illinois Central R.R. Co.*, 01 C 2174 (Gottschall)

*Gregory Herman* v. *Illinois Central R.R. Co.*, 01 C 2175 (Guzman)

*Nancy Haigh* v. *Illinois Central R.R. Co.*, 01 C 2176 (Castillo)

*Shalaine Johnson (Dajuavon Williams)* v. *Illinois Central R.R. Co.*, 01 C 2177 (Gottschall)

*Charlene Hempfling* v. *Illinois Central R.R. Co.*, 01 C 2178 (Gettleman)

*Shalaine Johnson* v. *Illinois Central R.R. Co.*, 01 C 2180 (Pallmeyer)

*Shalaine Johnson (Jodeon Rouser)* v. *Illinois Central R.R. Co.*, 01 C 2181 (Marovich)

*Blanche Jones* v. *Illinois Central R.R. Co.*, 01 C 2183 (Leinenweber)

*Mary Mosley* v. *Illinois Central R.R. Co.*, 01 C 2184 (Conlon)

*Nancy Schafle* v. *Illinois Central R.R. Co.*, 01 C 2185 (Bucklo)

*Michelle Piette* v. *Illinois Central R.R. Co.*, 01 C 2187 (Hibbler)

*Cedric Stewart* v. *Illinois Central R.R. Co.*, 01 C 2189 (Conlon)

*Robert Munson* v. *Illinois Central R.R. Co.*, 01 C 2190 (Kennelly)

*Minnie Stewart* v. *Illinois Central R.R. Co.*, 01 C 2192 (Moran)

*Doris Whitehead* v. *Illinois Central R.R. Co.*, 01 C 2193 (Norgle)

*John Vant (Leona)* v. *Illinois Central R.R. Co.*, 01 C 2194 (Gettleman)

*Ray Stewart* v. *Illinois Central R.R. Co.*, 01 C 2195 (Bucklo)

*John Vant* (Virgil) v. *Illinois Central R.R. Co.*, 01 C 2196 (Grady)

*John Vant (Wendy)* v. *Illinois Central R.R. Co.*, 01 C 2198 (Conlon)

*Kelley Whitaker* v. *Illinois Central R.R. Co.*, 01 C 2199 (Norgle)

*Laura Lopez* v. *Illinois Central R.R. Co.*, 01 C 2232 (Lindberg)

*Grace Lopez v. Illinois Central R.R. Co.*, 01 C 2234 (Hart)

*Lester Barr* v. *Illinois Central R.R. Co.*, 01 C 2285 (Norgle)

*Vandra Sims* v. *Illinois Central R.R. Co.*, 01 C 2286 (Pallmeyer)

*Joseph Sims* (Vannika) v. *Illinois Central R.R. Co.*, 01 C 2287 (Norgle)

*Carlos Fornari* v. *Illinois Central R.R. Co.*, 01 C 2289 (Grady)

*Jamie Smith* v. *Illinois Central R.R. Co.*, 01 C 2293 (Darrah)

*Andrea Shidle* v. *Illinois Central R.R. Co.*, 01 C 2304 (Hibbler)

*Joseph Sims (Donnell)* v. *Illinois Central R.R. Co.*, 01 C 2305 (Shadur)

*Joseph Sims* v. *Illinois Central R.R. Co.*, 01 C 2306 (Zagel)

*Joseph Sims* (Joseph) v. *Illinois Central R.R. Co.*, 01 C 2307 (Conlon)

*Joseph Sims* (Jasmine) v. *Illinois Central R.R. Co.*, 01 C 2308 (Pallmeyer)

*David Roe* v. *Stokes, et al.*, 01 C 2378 (Conlon)

*Marilyn Shidle* v. *Illinois Central R.R. Co.*, 01 C 2379 (Leinenweber)

*Joseph Shidle* v. *Illinois Central R.R. Co.*, 01 C 2380 (Darrah)

*John Stolfa* v. *Illinois Central R.R. Co.*, 01 C 2381 (Gottschall)

*Connie Knode v. Illinois Central R.R. Co.*, 01 C 2382 (Norgle)

*Blanch Fortune* v. *Illinois Central R.R. Co.*, 01 C 2383 (Darrah)

*Jennifer Hall v. Stokes, et al.*, 01 C 2384 (Shadur)

*Jessica Boeh* v. *Illinois Central R.R. Co.*, 01 C 2385 (Gottschall)

*Selena Roque* v. *Illinois Central R.R. Co.*, 01 C 2465 (Guzman)